Thank you, Your Honor. Good afternoon, and may it please the Court. Matt Houghton, Pro Bono Counsel for Alondra Montero-Alvizures. Alondra fled Guatemala after a decade of persecution, but once she brought that record evidence in front of the IJ, the IJ reduced the case to a matter of a domestic dispute. In doing so, that error percolated throughout the IJ's ruling. The BIA adopted those erroneous conclusions, and that flawed decision must be reversed. Well, part of the problem is, I mean, your brief would have been a terrific brief to file in the BIA, but we're not the BIA. And a different brief was filed in the BIA that raised different arguments, and then the BIA rejected those. And so I don't understand how the new arguments here that you didn't raise in front of the BIA are properly before us jurisdictionally. Well, Your Honor, there's no requirement that the petitioner have raised the specific arguments she raises on appeal to the BIA. Yes, there is. I mean, we've said in our mock decision in Ubudu that you're limited to the issues you've raised in your brief before the BIA. I respectfully disagree, Your Honor. The purpose of the exhaustion requirement is to give the BIA the opportunity to identify an error and to correct the error. And there are several cases that we've cited in our brief that stand for the proposition that the argument does not need to be specifically raised in the brief to the BIA. For example, in one of the cases, I believe it's Habib, the court held that an issue had been exhausted where the BIA had expressly adopted an issue that was explicitly discussed by the BIA. And in doing so, the BIA had the opportunity to correct the error and pass on that decision. Now, in this instance, the main argument that the government claims Alondra did not raise is with respect to the nexus issue. Now, in the BIA's opinion on page 4 of the record, the BIA makes the finding, however, it appears that Alondra's persecution from Herman was related to his desire to have a relationship with their child. Now, that cites page 8 of the IJ's decision. And if we go to page 8 of the IJ's decision and read from pages 60 to 61 of the record, we see very clearly in that paragraph that the IJ makes a finding that Alondra's persecution was not related to her political activities or her participation in political parties. It would be hard to imagine that the BIA read only the last sentence of that paragraph and didn't have the opportunity to review the beginning of the paragraph and agree with the IJ's opinion that Alondra had not established a nexus between her political activities and her persecution. And in doing so under a bead in that situation, the argument is considered exhausted in front of the BIA and is appropriate for this court to consider. I'm just looking at the BIA brief, and I think Judge Collins is right that even if you raise something before the IJ in order for it to be exhausted by the time it comes here, it needs to have been presented to the BIA, called to the BIA's attention as an error, and it should be corrected. And I look at the issues that were raised in the BIA brief, and there's nothing about political opinion involving that party. It's about political opinion as pro-life. That's certainly exhausted, but not the main framing that you've presented the brief to us. Yes, Your Honor, and I understand that. And I'm not going to argue that the BIA brief had something in it that it doesn't. I can't come up here and tell you that the BIA brief exhausts that specifically talked about the relationship between her persecution and her membership in the UCN. But this circuit also has these cases that we've cited in our reply brief that says that the exhaustion rule is not draconian. There's – Well, the case I referred to, if mistakenly, as a voodoo, it's a BB. And what it says is when a petitioner does file a brief, the BIA is entitled to look to the brief for an explication of the issues that petitioner is presenting to have reviewed. The petitioner will, therefore, be deemed to have exhausted only those issues he raised and argued in his brief before the BIA. Here, petitioner did file a brief, which did not raise the withholding and removal issue. He, therefore, didn't exhaust that claim, and we lacked jurisdiction to review it, and we even overruled contrary authority inconsistent with that rule of forfeiture. How do you get around that language? Yes, Your Honor, I would direct you to page 1041 of ABIB, which says that arguments are exhausted where the BIA expressly adopts an IJ decision that explicitly discusses the issue. You're referring to this particular case? Yes, Your Honor, page 1041 of that case. It doesn't have a 1041. It's in the 12, the case is 554 F3rd 1203. Are you looking at a different version? I have 432 F3rd 1037. 432 F3rd 1037? Yes, Your Honor. I have that, and do you want us to look at page 1041? You said, what's the language that you're going to use? The language, and this is from my notes, so it's not exact, but the arguments are exhausted where the BIA expressly adopts an IJ decision that explicitly discusses the issue. I guess, what's the basis for your saying that here the BIA expressly adopted the IJ's decision? Yes, Your Honor, so if we go to page 4 of the record, that's the BIA decision. The BIA says it appears that the reason for Alondra's persecution by Herman was because he wanted a relationship with the child. Now, that cites to page 8 of the IJ's decision. All right, go ahead. And if we go to page 8 of the IJ's decision, where that citation comes from, that paragraph makes a finding that her persecution had nothing to do with her political activities. Yes, but that's not an adoption of the IJ's decision in the way that our cases are talking about it, is it? I respectfully disagree, Your Honor. I imagine Your Honor is hoping to hear me say we're talking about Bourbono. I thought that in terms of the exhaustion requirement being satisfied, I thought that's what our cases were talking about, not just a citation, just a portion of an IJ decision. Right, well, the exhaustion concept predates Bourbono. Now, there's cases in a case called Sagemark, which is cited in Petitioner's reply, that holds the same theory. The underlying policy consideration is that the BIA should have the opportunity to pass on an issue. Now, in this situation, it doesn't so much matter whether or not the BIA cited Bourbono. It matters that the BIA went back and reviewed the IJ's decision that dealt with Nexus, and within that decision, the IJ made the finding it did not have anything to do with her political opinions. It had only to do with Christopher. Now, when we're, I think, we're parsing it too finely if we're trying to say that the BIA needed to make that same finding rather than just confirm that it agreed with the IJ's finding. Right, but I just think that you're being sort of unfair to the BIA. The BIA gets a brief from the lawyer and says she wasn't, your claim wasn't pressed say. And the lawyer says, here are the errors that I'm complaining about. I don't see why the BIA isn't entitled to say, okay, well, let's review the IJ's decision to see if we agree with any of the errors you've pointed out. But if you don't point out what, they're not, how are we expecting them to come through and figure out, oh, well, there might have been some other error here that they haven't talked about in the brief. Yes, sir. All right, well, at that point, if the BIA is making clear that they've reviewed it and had the opportunity to correct the error, the court. But nobody has called the error to their attention. That's my problem with your argument. You're saying they had an opportunity. Yeah, they reviewed it. I'm not denying that. Certainly, they read the page of the IJ decision that you're talking about. But in terms of having an opportunity to correct the error, if nobody has flagged an error as needing correction, how is the BIA to be faulted for not having done that? Well, Your Honor, there's no requirement that the BIA, that somebody present an error to the BIA in a brief. If the BIA has considered an error and makes a comment on it, even if the petitioner says nothing about it, then in that case, it's been exhausted. Okay, agreed. And that's really the situation we have here. We're looking at a paragraph that has a finding initially that the nexus, that her persecution had no nexus connection to her political activities. And later in that paragraph, at the end, concludes, instead, it was because the husband wanted a relationship with the child. So, in that circumstance, the BIA had the opportunity to review the IJ's conclusion that the persecution had nothing to do with her political activities. And the BIA agreed with the IJ's finding. And in the words of the circuit, it would be decidedly unfair to review that decision. Now, I don't know if you have any more questions on the exhaustion issue. If you would like me to proceed to the substantive or... I'll proceed. Okay. So, with respect to... Hold on, hold on. I think Judge Kleinfeld might have a question. Yes, Your Honor. Are we not getting to you? I should have checked at the onset. Judge Kleinfeld, are you on mute? Is your speaker on, Tally? Or press and hold the space key. I'll press all three. We have you now, Judge. You do? Yes, we can hear you. Ah, good. I thought we had already taken care of that. I'm looking at the BIA decision, and I just don't see the words you want me to rely on to show that they were thinking about the issue that, although not raised in the brief, they thought about. I mean, the basic idea is we're supposed to defer to the administrative agency, and we can't do it if no one told them the IJ did something wrong and they said, No, we didn't. Or, yes, you did, for the reasons that you say or the reasons that your adversary says. Tell me again where it is in the BIA decision. It's on page four, Your Honor. I do not have the decision right in front of me, but on rebuttal. Page four of the record. Okay, I'm looking at page four of the record, page two of the decision. I have it before me. Tell me the words, the paragraph. What should I look at here? I believe it's the second paragraph down where it says, However, it appears that the IJ found that the predominant relationship and reason for her suffering persecution was because the man wanted a relationship with the child. There is no however in the second paragraph down. The word doesn't appear. You must be talking about the first paragraph. And it says there the IJ determined that the respondent companion's central reason for targeting her was to develop a relationship with his child. Correct. In addition, an alien's fear stemming from a personal dispute is not a basis for asylum. I don't understand where this raises anything political about objects. Well, Your Honor, if we look to the IJ decision that touched on that finding, we see that the IJ made the decision that it had or made the finding that her persecution had nothing to do with her political activities. Now, that decision, that finding was based on IJ's ignoring of evidence. Okay. Now, the. Yeah, yeah, yeah. I'm sorry, Your Honor. Well, never mind. Go on. I'm sorry. It just cut out for a second, Your Honor. I apologize. And what happened was when the IJ reduced this case to a domestic dispute, they completely ignored the persecution that Alondra had been through earlier on for an entire decade that predated Christopher. Okay. This is a woman who in 2016 was beaten and dragged into a bathroom and locked in there, and when she was let out, she was threatened, if you don't stop knowing about our business, we're going to kill you the same way we killed your father. And then in 2018, after a political rally where she accompanied her uncle, who at the time I believe was the minister of the environment for Guatemala, she spoke out against these gangs, and when she got home, they were there to greet her, and they beat her again, and that was in retribution for her speaking out against the Acquire family and the Zetas. And the judge ignored. I thought the only beating was in the bathroom. I thought that the testimony was that when she came home from the meeting, they just smashed windows, am I mistaken? Yes, Your Honor. If you look at, I believe it's page 204 of the record, it's in her declaration. It's very quick that she says that they beat her physically during that attack. Did she say that in her testimony at the hearing? I don't recall, Your Honor. I can get that answer for you on rebuttal. I see that I'm out of time. I apologize. We've taken you over your time. You wanted to address more of the merits. If you could take ten minutes to do that. Can I ask you one question on the merits? What do we make of the BIA's comment in the context of the torture convention where it says, however, the respondent was not physically harmed in Guatemala and, as noted above, her child lived safely? That, if you are assuming arguendo credibility, as the IJ did and the BIA did, that statement seems to be clearly incorrect. But it's made in the context of the torture finding, but what do we do with that? What's the significance of that mistake with respect to the case as a whole? Yes, Your Honor, and I appreciate you letting me have the time to discuss that issue. With respect to the torture finding, that torture finding relied on the IJ's finding that Alondra had not been physically harmed. And so that error needs to go back, and that needs to be reviewed to determine whether or not these physical beatings constituted torture. I thought the IJ made a finding that she wasn't harmed after she broke up with the father of the child, not that she wasn't harmed before that. Right. The IJ made the temporal distinction that the BIA here fails to, and I think what Judge Collins is asking is, well, what are we supposed to do with this? You know, this is just not a correct statement if you don't limit it to the post-breakup period, right? Yes, exactly, and that's a more artful way of saying it, is to say that the BIA clearly erred in finding that she had not been physically harmed in Guatemala, and that was raised in her brief to the BIA, was that the IJ erred on that, and the BIA still found that she hadn't been physically harmed, but that clearly ignores record evidence and needs to go back to be determined whether or not that that physical harm constitutes torture. I'm out of time. We'll certainly give you time for a moment. I appreciate it. Thank you. Okay. Thanks very much. Let's hear from counsel for the Attorney General. I appreciate your bearing with us by holding the phone there. Go ahead. It's me, if you're able to hear us. I'm a domestic. I please accord your honors to Miranda, on behalf of the United States Attorney General. This immigration case fit her spot, a file on the holding rule and protection of the Convention Against Torture had protection for the immigration judge. By the time her claim got to the Board of Immigration Appeals, where she was counseled, it narrowed into one claim, focused on her domestic dispute with her domestic partner, Herman, over custody of their child, Christopher. Everything else was not mentioned in that brief to the Board. She simply focused on two issues, whether or not this relationship with Herman satisfied her eligibility for asylum and the holding of removal, and that it constituted a persecution on account of her anti-abortion political opinion, and a persecution on account of a particular social group comprised of women who used property by their male partners. The Board rejected these claims, and agreed with the immigration judge that the evidence showed only a personal dispute, and a personal dispute not satisfied asylum or withholding of removal. And for the Court, when you look at Fitcher's opening brief, there's no mention of any of these claims. And that's what the government argues waiver. What you have is entirely new claims that weren't raised to the Board about anti-corruption or anti-crime political opinion, a new particular social group comprised of a familiar relationship to a father. Can I ask you about this same sentence that I asked your opposing counsel about, where the BIA, in the context of the torture convention discussion, says that the respondent was not physically harmed in Guatemala, which seems clearly to be incorrect. And if that's what the BIA was thinking when it was deciding this case, I'm not sure that it doesn't, in fact, affect the whole of the analysis, and maybe the whole thing needs to go back. Can you tell me why you think that would be wrong? Well, I think the BIA is focused on the personal dispute. That's all it has raised to the Board. So, when you look at a personal dispute, the respondent's testimony was she was not physically harmed after she broke up with her. But there's no temporal limitation in the BIA, because the BIA just did not seem to understand what the evidence was before it, and when it doesn't understand the record and then makes decisions based on it, we don't get to reweigh it. I'm not sure why that just doesn't have to go back, because it didn't seem to know the record. Well, I think the Board is looking at the immigration judge's finding about the total clear probability of torture here, because what the immigration judge found is that there's no one looking for Petitioner, and that's also something Petitioner doesn't dispute before the court. Petitioner agrees no one was looking for her, and that includes Herman. And that's what the Board is looking at. Herman no longer had an interest in the custody dispute. And so, even if this was that the Board excluded the fact that Herman previously locked her in the bathroom and beat her when she asked about her father, but the Board is looking at the immigration judge's finding that no matter that, Herman doesn't have an interest in her anymore. He is not seeking custody over the child. Christopher has been living with his grandmother in Guatemala his entire time, and since she entered the United States, he no longer comes by looking for Christopher, and that is a no clear probability of torture in this case. So, I think that's what the Board is looking at, is if it's hold, then that's a dispute. There was no physical harm because of the dispute. And again, he's not looking to seek custody anymore. So I don't think it's a reversible error. And also, I don't believe Petitioner argues that claim. So it really would be getting before any arguments presented to the court, because as we argue in our brief, Petitioner should essentially wait to make Act Claim 2. Petitioner does not challenge, again, the immigration judge's finding and affirmed by the Board that no one is looking for her. And that is the important part of the Board's decision, is that there really is no clear probability of torture no matter how you splice it. Herman's not looking for her. There's no persecution she ever suffered on account of a political opinion. And Julio, whose name is a smuggler, he's not looking to harm her either. And that's why the Board says there's no clear probability of harm here in the immigration judge's finding. But again, that's waived. That's nothing that Petitioner talks about in their brief. They talk about the background evidence. And so that's why we argue there's nothing to reach for the court when it comes to the cap protection claim. I think you still have to help us a little more with what Judge Collins pointed out. We know, if she's believed as she was, that Herman walked her in the bathroom and beat her. And we know that the BIA says she was not physically harmed in Guatemala. So it appears that there's an error. Now, your argument is essentially that it's immaterial because her torture claim isn't based on Herman beating her in the bathroom. There's no reason to think she's going to go back to Herman and get beaten in the bathroom again. No reason to think the government's going to acquiesce if she calls the cops on Herman. No reason to think any of this is at risk, nobody looking for it. But that really doesn't go to the point of whether the BIA was just too sloppy in saying that she wasn't hurt in Guatemala. So we have to tell them to do it again and help. Of course, Your Honor. That sentence says the respondent was not physically harmed in Guatemala. As noted above, her child lived safely with the respondent's mother. I think that shows the Board is focused on the custody dispute, but the fact that Herman was only seeking to harm her ultimately because of the custody dispute. But then he stopped. He stopped coming by. He no longer seeks custody of the child. So that's what the Board is saying. There's no physical harm in relation to the custody dispute. You're not understanding the question, and you've been asked it twice. I guess that's enough time to spend on it. I've got time. I've got time to be obtuse. I just believe that the Court is not referencing the prior harm because it just wasn't that issue. Let me rephrase the question. I understand your argument that with respect to the specific paragraph in which the factual mistake was made, which was the Georgia Convention, that the ensuing sentences articulate a rationale that would be independent of the error about prior harm. I understand that. But the concern that I have is maybe a little broader, which is that in the course of the Georgia Convention, the BIA let drop this comment about the underlying facts of the case that showed that maybe they didn't know what the case was really about. And does that call into question their analysis of asylum and withholding, where issues of past harm may make a big difference, more so than in the torture context, perhaps? I don't believe it calls into question the reasoning for asylum and withholding removal because there was no reason to address past harm for those claims. And that was something immigration did address. But when you get to the Board, the Board eschewed that and found that really there's no reason to address that because there's simply no nexus for it. The nexus is unsatisfied in this regard. No matter how you look at it, it was a personal dispute, a custody dispute over Christopher. That's how she described her testimony. It started by saying she was asked what happened to her. She said, I was beaten by my domestic partner, Herman. And when asked why he beat her, he said because he wanted custody over my son, Christopher. That's what was going on with asylum and withholding removal, is that there simply was no nexus. So there was no past harm that is relevant to the Board's finding as far as asylum and withholding removal. And, again, I would just argue it's not relevant to the CAT claim either because she really also, the brief to the Board didn't really argue CAT. Besides mentioning CAT, there's no arguments about CAT. So, once again, we're really expecting, the petitioner is expecting much too much of the Board to make all her arguments for her in this case. And she had counsel. She could have made that argument to the Board, but she didn't. There's nothing really about CAT in that claim. And the petitioner's brief and also the opening brief, I don't believe, makes this argument about error either. Unless the panel has any further questions about the government's waiver argument, we will stand by the fact that we're not addressing the merits because we believe this is a strong waiver case, a strong exhaustion case, and request that moment of briefing if the court would like to find there is no waiver and finds there is no exhaustion satisfied, which is an opportunity to address the merits in a moment of briefing. Okay. I don't think my colleagues have any other questions for you. Thank you for your argument. Thank you, Your Honor. Let's put two minutes on the clock for rebuttal. Okay. Thank you, Your Honor. I want to start with what the respondent just said at the end there. The respondent mentioned that with respect to Alondra's beating and its relation to Christopher, the testimony before the IJ was that she wasn't beaten once Christopher came into the picture. That was how the IJ arrived at the conclusion that she had not suffered past persecution. It was because Herman had shown up to try and take Christopher and had threatened her, but because Herman had never acted on those threats, the IJ found that there was no physical harm suffered. So, again, that's just incorrect. I'll re-counsel with some I'm concerned about there. It does look like the BIA sentence that she suffered no physical harm in Guatemala was factually incorrect. It also appears that her boyfriend or live-in partner beat her up because they disagreed about abortion and who was going to have the baby and who was going to get custody, whether she should abort or shouldn't abort, and that looks like the whole thing. He didn't care about her politics. She wasn't arguing about her politics with him, and if that's so, it's just an ordinary domestic beating, as unfortunately often occurs when husbands and wives or domestic partners feel strongly about a dispute, and it's not one of the bases for any sort of relief. If it rises to the level of torture, then you still have to show it's by the government or with the acquiescence of the government, and it doesn't appear that there's any such showing here. Assuming that the BIA just was sloppy in writing that sentence, I'm having trouble seeing why it matters. Your Honors, I'm out of time. I'll answer the question. I have it in mind. So when the error that Your Honor hit on there was that Alondra was not beaten by Herman after Christopher came into the picture. Okay? She was threatened, and the IJ made that finding, and our point is that the beatings that she did receive predated Christopher. The beating, she was starting with her father's murder in 2007, and then her brother fleeing the country after they got shot at in a shootout in a car chase. That was the period of persecution that we're talking about, all the way up until Christopher became another linchpin or launching point to let them commence this persecution. And our point was that the BIA and the IJ ignored the evidence of those physical beatings for that decade leading up to Christopher, which really were, you know, targeting her for her political activism. Okay, is there another point you were hoping to get to in rebuttal? No, if there are no other questions, I'm ready to submit. Okay, well, on behalf of the court, let me thank you and your colleagues at your firm for taking this case on through our pro bono program ISM. Yes, sir. We're very grateful. The court is very grateful for your help in dealing with a case of this complexity, and you all did a terrific job. So thank you very much. Yes, well, on behalf of my team, thank you very much. Okay, very good. The case just argued is submitted.
judges: KLEINFELD, WATFORD, COLLINS